Wesley W. Hoyt, ISB #4590
HC 66 Box 313 A
Kooskia, ID  83539
Tel: (208) 926-7553
Fax: (208) 926-7554
Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR-04-0127-C-RCT |
| ) | |
| Plaintiff, ) | |
| vs. ) | MOTION TO DISMISS |
| ) | SUPERSEDING INDICTMENT |
| DAVID ROLAND HINKSON, ) | |
| ) | |
| Defendant. ) | |

The Defendant David Roland Hinkson, by and through his attorney Wesley W. Hoyt, does respectfully move to dismiss the superseding indictment, filed on September 21, 2004, and in support of this motion, states to the Court as follows:

### FACTS

The United States obtained an indictment in this case on an unspecified date (herein the "original indictment") which indictment was filed with the Court on June 22, 2004, charging Mr. Hinkson with nine counts of solicitation to commit a crime of violence under 18 U.S.C. Sec. 1114 and 18 U.S.C. Sec. 373 and two counts of threats to retaliate against federal officials in violation of 18 U.S.C. Sec. 373 and 115(a)(1)(B). Mr. Hinkson was arraigned on the original indictment and the Court entered pleas of not guilty to all counts for him.

On September 21, 2004, the United States appeared before a grand jury and obtained a superseding indictment, which contained the original eleven counts (in substantially the same form as alleged in the original indictment) and added a section entitled "Sentencing Aggravators" by the addition of paragraphs 33 to 56 as stated in the superseding indictment. These paragraphs contain allegations that defendant (1) committed the acts alleged in the first eleven counts while motivated by knowledge that the alleged victims were 'officers and employees' of the United States, thereby enhancing any sentencing guideline level under 3A1.2(a), of the Sentencing Guidelines, (2) offered money (i.e., something of pecuniary value) in connection with the acts alleged in the original counts, thereby enhancing any sentencing guideline level under 2A1.2(a) of the Sentencing Guidelines, and (3) committed the alleged

offenses while on bond, again enhancing any sentencing guideline level under 2J1.7 of the Sentencing Guidelines.

## ARGUMENT
### I. The government correctly recognizes that enhancements constitute elements of the alleged offenses which must not only be proven to a jury beyond a reasonable doubt, but also must be pled in the indictment.

An indictment must be "...a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). By including allegations in the indictment (as the government has done here under "Sentencing Aggravators") that the offenses were committed by defendant with knowledge of the employment status of the alleged victims and/or offering something of pecuniary value and/or while defendant was on bond the government recognizes that these facts must be part of the "...essential facts constituting the offense charged" and thus must be pled. In essence, the government has acknowledged, albeit implicitly, that the facts relating to defendant's knowledge of the status of the alleged victims (and motivation resulting therefrom) and/or offering something of pecuniary value and/or being on bond are elements of the offenses to which they relate and must not only be proven to a jury beyond a reasonable doubt, but must also be pled in an indictment.

The government is correct in this assessment. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In reaching this decision, the *Apprendi* Court relied heavily upon the Fifth Amendment right to a grand jury. Reviewing the historical nature of this right, the Court reasoned that the right provides criminal defendants with the "ability to predict with certainty the judgment from the face of the felony indictment . . . ." *Id.* at 478. As a result, "[j]ust as the circumstances of the crime and the intent of the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment." *Id.* at 480. Because *Apprendi* involved a New Jersey statute and the Fourteenth Amendment does not incorporate the Fifth Amendment right to a grand jury, the *Apprendi* Court did not address the indictment issue directly. *Id.* at 477 n. 3. Nonetheless, two years later, the Court unanimously held that, in federal prosecutions, any fact that increases the penalty beyond the statutory maximum must be charged in the indictment. *See United States v. Cotton*, 535 U.S. 625, 627 (2002).

In *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Supreme Court clarified the *Apprendi* holding. The Court held that the statutory maximum, discussed in *Apprendi*, was the maximum guideline range established by Blakely's plea. *Id.* at 2538. As in *Apprendi*, *Blakely* involved a state statute and, as a result, the Court did not have the occasion to address whether facts that increase the statutory maximum must be pled in the indictment. *Cf. Apprendi*, 530 U.S. at 477 n. 3. Nonetheless, the *Blakely* Court's conclusion that the statutory maximum for *Apprendi* purposes is the maximum guideline sentence, coupled with the *Cotton* Court's holding that any factor in a federal prosecution that increases the statutory maximum must be pled in the indictment, leads to the inevitable conclusion that any factor increasing a federal defendant's guideline sentence must be pled in the indictment. Thus, the government's conclusion that they must include in the indictment (i.e., the Superseding Indictment) the allegations that defendant was motivated by employment status, offered something of pecuniary value and/or because defendant was on bond, comports with the holdings in *Blakely*, *Cotton*, and *Apprendi*.[1]

### II. While the government is correct in concluding that all guideline enhancements constitute elements of an offense that must be included in the indictment, the government nonetheless cannot include these factors in the indictment.

Once it is established that guideline sentencing enhancements constitute elements of an offense that must be alleged in the indictment, the conclusion becomes clear that Congress improperly delegated its power to define crimes to the Sentencing Commission and violated the Constitutional separation of powers doctrine. As a result, allowing the indictment to include these enhancements as "Sentencing Aggravators" forces Mr. Hinkson to face an indictment containing an unconstitutionally created crime (i.e., a crime created by the judiciary).

### A. Congress improperly delegated its power to define crimes to the Sentencing Commission.

In *Mistretta v. United States*, 488 U.S. 361 (1989), the Supreme Court rejected a challenge that, in enacting the guidelines regime, Congress improperly delegated its authority to the Sentencing Commission. The Court reasoned that the Sentencing Reform Act did not provide sufficient criteria to the agency it created. *See Mistretta*, 488 U.S. at 371-79. Justice

---

[1] If the Court concludes that the defendant is wrong in this assertion, then the section of the Superseding Indictment entitled "Sentencing Aggravators" is both immaterial and prejudicial to the defendant and, as a result, must be stricken. *See* Fed. R. Crim. P. 7(d); *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990).

Scalia agreed with this determination. *See id.* at 416 (Scalia, J., dissenting). He dissented because he perceived a more fundamental problem with the Act. The Act, in his view, established an agency that had no other function than the making of laws, a function that only Congress itself can exercise. *See id.* at 416-22.

Even if the Court can be deemed to have decided the broader argument that Justice Scalia articulated, it did so on the assumption that the Sentencing Commission was not making laws, but was only cabining judicial discretion. The Court, as it explained in its discussion of separation of powers, considered the Guidelines to "...do no more than fetter the discretion of sentencing judges to do what they have done for generations -- impose sentences within the broad limits established by Congress." *Id.* at 667.

This view, expressed in a case in which there was no Fifth and Sixth Amendment challenges (later sustained in *Apprendi* and *Blakely*) is now untenable. As explained above, and implicitly acknowledged by the government's Superseding Indictment, the holding in *Cotton* that facts which increase the statutory maximum must, under *Apprendi*, be charged in an indictment establishes that such facts are elements of a crime. *See supra* at 2-3. And the holding of *Blakely* that facts that increase exposure under a mandatory guideline, work an increase in the statutory maximum, means such facts are likewise elements. *See id.*

The Sentencing Commission thus did not, as *Mistretta* assumes, merely limit where, within a broad range described by Congress, a judge could sentence. Instead, the Commission effectively set new statutory maxima based on how crimes defined in the criminal code intersected with factors listed in the Guidelines. This is the creation of new offenses. The Court in *Mistretta* did not consider the consequences of Congress allowing an agency to perform this quintessentially legislative function.

In light of the new understanding that the Guidelines effectively increase defendants' maximum statutory exposure, and thus define new offenses, the Guidelines violate the delegation doctrine. "The delegation of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *United States v. Liparota*, 471 U.S. 419, 424 (1985). Even if in part the Sentencing Commission exercised a judicial function in creating the Guidelines, there can be no doubt that it also exercised the legislative function of enacting new criminal offenses. To this extent, it acted as "a sort of junior-varsity Congress." *Mistretta*, 488 U.S. at 427 (Scalia, J., dissenting).

Congress could not delegate its authority to an agency of the Judicial Branch to create laws. "[T]he basic policy decisions governing society are to be made by the Legislature. Our Members of Congress could not, even if they wished, vote all power to the President and adjourn *sine die.*" *Id.* at 415 (Scalia, J., dissenting). Likewise, Congress could not vote a core part of its

power to an agency of the Judicial Branch. As a result, Congress improperly delegated its power to define crimes to the Sentencing Commission.

### B. By joining the power to define crimes with the other powers exercised by the Sentencing Commission, an agency of the Judicial Branch, Congress violated the separation of powers.

The Supreme Court's rejection of the separation-of-powers attack in *Mistretta* also rested on the now unquestionably incorrect assumption that Congress did no more than permit the Sentencing Commission to limit judicial discretion at sentencing. In fact, as just shown, the Commission exercises the legislative function of defining offenses. *See supra* at 4-6.

Because the Commission is an agency of the Judicial Branch, *see* 28 U.S.C. § 991(a); *Mistretta*, 488 U.S. at 384, it may not be given powers "that are more appropriately performed by the other Branches," *Mistretta*, 488 U.S. at 385. Congress violated this principle when it gave the Commission the uniquely legislative power to define criminal offenses. *See supra* at 4-6. The Sentencing Reform Act is invalid on separation-of-powers grounds because it "expand[s] the powers of the Judicial Branch beyond constitutional bounds by uniting within the Branch the political or quasi-legislative power of the Commission with the judicial power of the courts." *Id.* at 361.

### C. Were the Court to allow the government to proceed with the superseding indictment, it would force Mr. Hinkson to face an indictment that includes crimes that were created unconstitutionally.

As explained above, *Blakely* and *Apprendi* mandate the conclusion that guideline sentencing enhancements constitute elements that must be pled in an indictment. *See supra* at 2-3. As a result, Congress both improperly delegated its power to create crimes and, in delegating this power to the Sentencing Commission located within the Judicial Branch, violated the separation of powers. *See supra* at 4-6. Thus, were the Court to allow the government to proceed with the superseding indictment, it would force Mr. Hinkson to face charges entitled "Sentencing Aggravators" that contain unconstitutionally created crimes.

### III. The government is also correct that *Blakely* is applicable to this case.

On July 21, 2004, the Ninth Circuit held *Blakely* applicable to the USG. *U.S. v. Ameline*, 376 F.3d 967, 970 (9th Cir., 2004) making the same applicable to the case at bar.

## CONCLUSION

There is a dichotomy between the legal theory of pleading the sentencing enhancements as elements of a crime as directed in *Blakely* and the practicum of pleading those elements in the Superseding Indictment. In order to gain the enhanced sentence, the government must now under *Blakely* (as applied) include in the indictment, allegations of the alleged victims' employment status and/or alleged pecuniary value offered by defendant and/or the fact that defendant was on bond at the time of the alleged offense, in order to be eligible to seek enhancement at the time of sentencing. However, once included in the indicting instrument, the "Sentencing Aggravators" are unconstitutional, judicially created crimes.

Thus, the dichotomy is that, in order for the government to obtain an enhanced sentence, it must place the "Sentencing Aggravator" charges in the indictment, yet when so located in the charging instrument, such cannot be Constitutionally included under the separation of powers doctrine. This dilemma was not created by Mr. Hinkson and Mr. Hinkson should not be forced to answer an unconstitutional indictment. This inherent problem with the Superseding Indictment compels a single conclusion; the superseding indictment must be dismissed.

WHEREFORE, Mr. Hinkson respectfully requests this Court dismiss the Superseding Indictment and allow the original plea of not guilty to all 11 Counts to stand.

Respectfully submitted this 10th day of October, 2004.

_____
Wesley W. Hoyt
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on this 10th day of October 2004 I have served a true and correct copy of the forgoing document upon the persons named below by the method so indicated:

| | |
|---|---|
| Michael P. Sullivan<br>Dena Douglas Patterson<br>United States Department of Justice<br>Washington, D.C. 20530 | ☐ U.S. Mail, 1st class postage paid<br>☐ U.S. Certified Mail, postage paid<br>☐ Federal Express<br>☐ Hand Delivery<br>☒ Facsimile: 202-514-8714 |
| The Hon. Richard Tallman<br>United States Courthouse<br>1200 6th Avenue<br>21st Floor<br>Seattle, WA 98101 | ☐ U.S. Mail, 1st class postage paid<br>☐ U.S. Certified Mail, postage paid<br>☐ Federal Express<br>☐ Hand Delivery<br>☒ Facsimile: 206-553-6306 |

_____