BARRY M. SABIN
Acting United States Attorney
Counterterrorism Section

MICHAEL P. SULLIVAN
Special Assistant United States Attorney
MICHAEL D. TAXAY
Trial Attorney
United States Department of Justice
Counterterrorism Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 353-3125

04 DEC 17 PM 4:39

CAMERON S. BURKE
CLERK           IDAHO

FAX FILED

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | ) | Case No. CR-04-127-C-RCT |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| DAVID ROLAND HINKSON, | ) | |
| Defendant. | ) | |

### GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO FILE A SUPPLEMENTAL SUBMISSION RE: DEFENDANT'S MOTION TO SUPPRESS ALLEGED CONFESSION

COMES NOW the United States of America, by and through its undersigned attorneys, and respectfully files this reply in support of the government's motion to file a supplemental submission regarding defendant's motion to suppress evidence of his confession.

The transcript about which defendant complains – of his conversation with government

informant J.C. Harding on March 27, 2003 – was produced by *defendant*. Indeed, defendant has announced his intention to *introduce* that transcript at trial through his court reporter, Keith Evans. *See* Defendant's Designation of Expert Witnesses and Summary Disclosure of Testimony, dated November 1, 2004, at 2.

The transcript helps to demonstrate defendant's mindset when he decided to speak with Special Agent William Long, just one week later, on April 4, 2003. Defendant opened his discussion with S/A Long with talk of how Marianna Raff had set him up. This talk was highly relevant to the government's investigation, because defendant was offering his story of events, pointing the finger at someone else. Moreover, the taped conversation of one week earlier provides important context demonstrating that defendant understood both that the government was interested in murder for hire and that he (defendant) would be at the center of such an investigation. In the taped conversation, defendant discussed with J.C. Harding how Ms. Raff had offered to hire a hit man on defendant's behalf to kill Dennis Albers. The price for the hit was to be $6,000, which not coincidentally was precisely the amount that defendant had complained to S/A Long had been stolen from him by Ms. Raff. Accordingly, the transcript of the taped conversation is highly relevant to demonstrating whether *defendant* "evinced a willingness and a desire for a generalized discussion about the investigation" when he spoke with S/A Long on April 4, 2003, thereby waiving the prophylactic protections of *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). *See Oregon v. Bradshaw*, 462 U.S. 1039, 1045-47 (1983).

The key inquiry under *Edwards* and *Bradshaw* concerns defendant's intention. Did he

intend to engage in a conversation wherein he could possibly incriminate himself, without the assistance of counsel? Clearly, the answer to this question is, yes, defendant very much wanted to talk, to explain how he had been set up by Marianna Raff. In his response, defendant tries to reshape the relevant inquiry under *Edwards* and *Bradshaw*, focusing away from defendant's intention and instead on a hyper-technical definition of what was or was not at the core of the government's investigation. In this regard, defendant demands further cross-examination of S/A Long, presumably to determine whether the government was interested in defendant's talk of hit men and Denis Albers. Of course, this talk of serious, violent crime was relevant to and part of the government's investigation, having just been discussed a week earlier by defendant during his taped conversation with an informant.[1]

The prophylactic rule of *Edwards* does not and cannot turn on whether the government was most interested in, or charged the defendant with, a particular murder for hire. The difficulty with defendant's position is that, taken literally, it would preclude the government from listening to a confession about a crime when the government had advance notice of, and was therefore only investigating, another crime. To illustrate the point, assume the government was investigating and arrested Person X for insurance fraud. Then, after being read his Miranda warnings, Person X confesses to involvement in a murder for hire plot about which the

---

[1] Defendant also attempts to deflect the significance of this discussion of murder for hire, arguing that "if the Government believed that Marianna Raff was a focus of Agent Long's investigation on April 4, 2003, the Government should have produced her for testimony at the time of the follow-up hearing." In fact, this case is about defendant, not Ms. Raff, and the government has no intention of relying on Ms. Raff.

GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO FILE A SUPPLEMENTAL SUBMISSION
RE: DEFENDANT'S MOTION TO SUPPRESS ALLEGED CONFESSION
Page 3 of 6

government previously knew nothing. According to defendant's construction of *Miranda* and its progeny, Person X's confession regarding the murder for hire should be suppressed, because it was not previously being investigated by the government. Such an absurd outcome would conflict with the precedent detailed in the government's response, and "unnecessarily frustrate the public's interest in the investigation of criminal activities . . ." *Maine v. Moulton*, 419 U.S. 159, 179-180 (1980).

As was made clear during the evidentiary hearing on December 7, 2004, defendant wanted to discuss with S/A Long on April 4, 2003, matters of substance (other than the tax charges pending against defendant), and not just whether defendant could have a drink of water or use the telephone. *See Bradshaw*, 462 U.S. 1045-47 (contrasting defendant's question "Well, what is going to happen to me now?," with a "necessary inquiry arising out of the incident of the custodial relationship," such as seeking a drink of water or to use a telephone). The transcript of defendant's earlier conversation with a government informant helps to make this clear, and further cross-examination of S/A Long or J.C. Harding would shed no light on the relevant issues.

## CONCLUSION

For the foregoing reasons, as well as those stated during the evidentiary hearing and in the government's earlier brief, defendant's pre-trial motion to suppress his confession should be denied.

*Michael D. Taxay*

MICHAEL P. SULLIVAN
Special Assistant United States Attorney
MICHAEL D. TAXAY
Trial Attorney
United States Department of Justice
Counterterrorism Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 353-3125

Dated: December 17, 2004

# CERTIFICATE OF SERVICE

I certify that, on this 17th day of Dec. 2004, I have served a true and correct copy of the forgoing GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO FILE A SUPPLEMENTAL SUBMISSION RE: DEFENDANT'S MOTION TO SUPPRESS ALLEGED CONFESSION upon the persons named below by the method so indicated:

Wesley W. Hoyt
Attorney for Defendant
Bank One Building
333 West Hampden #500
Englewood, Colorado 80110

(X) U.S. Mail, 1st class postage paid
( ) Federal Express
( ) Hand Delivery
(X) Facsimile: 303-806-8881
(X) Facsimile: 208-926-7554

The Honorable Richard Tallman
United States Courthouse
1200 6th Avenue
21st Floor
Seattle, Washington 98101

( ) U.S. Mail, 1st class postage paid
(X) Federal Express
( ) Hand Delivery
(X) Facsimile: 206-553-6306

Kinko's Boise Downtown
Legal Copying Services Department
Fax Filing
691 South Capitol Boulevard
Boise, ID 83702

(X) Facsimile: 208-331-5150

Tene L. Lewis, Secretary