IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. CR-04-127-S-RCT |
| v. | ) ) ) | **MEMORANDUM DECISION** |
| DAVID ROLAND HINKSON, | ) ) | **AND ORDER REGARDING** **MOTION TO SUPPRESS** |
| Defendant. | ) ) ) | **STATEMENTS TO CHAD** **CRONER** |

Pending before the Court is the Defendant's Motion to Suppress Statements

to Chad Croner and Request for Evidentiary Hearing (Docket # 119); Motion for

Discovery Related to Defendant's Alleged Statements to Chad Croner (Docket #

120); and the Government's Opposition to Defendant's Motion to Suppress

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 1**

Statements (Docket # 130) and oral opposition to discovery.[1]  Having conducted

an evidentiary hearing and oral argument of counsel on January 7, 2005, and after

considering the evidence and the legal authorities provided by each side, the Court

now rules as follows:

## FINDINGS OF FACT

1. Defendant David Roland Hinkson is charged by Superceding Indictment

with soliciting other persons to murder federal officials or employees, specifically

United States District Judge Edward J. Lodge, Assistant United States Attorney

(A.U.S.A.) Nancy D. Cook, and Internal Revenue Service Special Agent Steven

M. Hines, as well as threatening to do bodily harm to the family members of Cook

and Hines.  All of these solicitations and threats are alleged to have occurred in the

District of Idaho after the Defendant was arrested on November 21, 2002, and

thereafter placed on pretrial release in another federal criminal case then pending

against Hinkson in this District.  Trial on the Superceding Indictment is to

commence on January 10, 2005, in Boise.

2.  Hinkson is currently detained in federal custody at the Ada County Jail in

---

[1]Defendant's motion for discovery also includes a request for an unredacted F.B.I. report regarding witness Brit Groom.  The Government has already provided the Defendant with this report. *See* Minutes of January 7, 2005, hearing.  The Court understands that this part of the motion is therefore withdrawn as moot.

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 2**

Boise, Idaho, pending sentencing after a jury returned verdicts of guilty on twenty-six counts of income tax and employment tax violations, structuring financial transactions to avoid currency transaction reporting requirements, and after Hinkson pled guilty pretrial to two counts of introducing misbranded drugs and devices into interstate commerce under the Food and Drug Act.

    3.  Federal inmate Chad Croner offered sworn testimony to this Court that he was first moved into the Ada County Jail housing module with Defendant on Sunday, November 21, 2004.  The housing module is designed for approximately eight inmates, but has held from four to nine inmates at various times during the period from November 21 to December 8, 2004, after which Croner was moved out of the jail.  Croner is serving a 21-month sentence imposed by United States District Judge Edward J. Lodge following Croner's felony plea to bankruptcy fraud, 18 U.S.C. § 152(a), and misdemeanor plea to failing to file a tax return, 26 U.S.C. § 7203.  He was awaiting transfer from custody of the United States Marshal at the Ada County Jail to the United States Bureau of Prisons.

    4.  Defendant Hinkson first began speaking with his cellmate, Chad Croner, on the afternoon of November 21st and learned that Croner had been sentenced by Judge Lodge.

    5.  Defendant first conversed with Croner about Hinkson's case on the

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 3**

evening of Sunday, November 21, and again on Monday, November 22, 2004.

Hinkson apparently felt comfortable talking with Croner since Judge Lodge had

presided over Croner's case and the same federal judge had originally been

assigned to preside over Defendant's Tax Case.

6.  Subsequent conversations occurred daily between the two men.  They

usually took place on Hinkson's bed while others were present in the module.

7.  Croner spoke with his defense attorney on November 22, 2004, and

reported what Hinkson had said to Croner.  Croner's lawyer instructed Croner not

to ask Hinkson any questions, but just to listen to what Hinkson said.  Croner

followed his attorney's advice.

8.  Further conversations between Hinkson and Croner occurred between

November 21 and November 30, 2004.  Croner did not initiate or provoke these

conversations.  Hinkson spoke to other cellmates as well.

9.  On November 30, 2004, Croner was interviewed by Federal Bureau of

Investigation (F.B.I.) Special Agent William Long.  Agent Long asked Croner

what information Hinkson had provided to Croner.  The agent then gave Croner

the same advice Croner had received from his own attorney: "Not to ask – don't

ask Hinkson questions, just listen."

10.  Croner followed those instructions.

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 4**

11. Prior to November 30, 2004, Croner had no contact with any law enforcement officer regarding Mr. Hinkson.

12. On December 8, 2004, Croner was interviewed for a second time by F.B.I. agents, who were this time accompanied by federal prosecutors from the United States Department of Justice.

13. Croner again told the Government what Hinkson had said to him while the two men were housed together in the same Ada County Jail housing module.

14. His last conversation with Hinkson had occurred on December 8th prior to his meeting later that day with the prosecutors and agents.

15. Following the December 8th interview, Croner was moved out of the Ada County Jail within 24 hours. He had no further conversations with Hinkson concerning Hinkson's case in that 24-hour period before the men were separated from one another.

16. No evidence was presented at the evidentiary hearing that Croner posed questions to Hinkson or violated the instructions he had been given by his own attorney and federal officers to simply listen to what Hinkson told him and then report that information to federal officials.

17. The Court finds Chad Croner's testimony to be credible and truthful on the key facts relevant to the *Massiah* issue raised by the defense. Croner presents

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 5**

as a reluctant witness who testified under a Cooperation Agreement dated December 22, 2004, in the hope of receiving a reduction in his prison sentence at some future point. The Court has considered that fact, and the cross-examination by defense counsel at the hearing, in viewing with skepticism the testimony of any cooperating informant like Croner who hopes to achieve a substantial penal reward for his testimony. However, for purposes of assessing Croner's credibility on whether he actively sought to question or interrogate Hinkson after November 30, 2004, as a *de facto* agent for the Government, the Court was presented with no countervailing evidence to refute Croner's sworn testimony that he adhered to the instructions to simply listen to what Hinkson said and report what he had heard. For purposes of ruling on this pretrial motion, the Court accepts as credible his testimony and relies upon it for the factual findings that the Court now makes that Croner did as he was instructed. The jury will obviously have to decide in light of all the evidence in the case whether or not Mr. Croner's testimony is reliable in all material respects as to specifically what Hinkson told him. That key factual question will be for the jury to resolve at trial.

18. For purposes of resolving this motion, the Court finds as a matter of fact that from November 21 to December 8, 2004, Croner did nothing more than report to authorities what his cellmate Hinkson had said to him and that he took no

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS - 6**

steps to initiate or stimulate admissions by Hinkson.

## DISCUSSION

### I.    Suppression of Alleged Statements.

The Defendant moves the Court to suppress evidence of the statements he made to Chad Croner while they were incarcerated in the same jail housing unit at the Ada County Jail in Boise, Idaho.  Through his motion, Hinkson argues that the statements made to Croner after November 22, 2004, were taken in violation of his Fifth and Sixth Amendment rights because Croner was acting as a Government agent once he had reported to the Government on that date.  Further, he asserts that Croner was acting as an agent because he received consideration in the form of a promised reduction in his federal sentence as a result of providing information to the Government.  As such, Hinkson argues that the statements he made to Corner should be suppressed because they were obtained in violation of the rule in *Massiah v. United States*, 377 U.S. 201 (1964), prohibiting government agents from eliciting incriminating statements after an accused is represented by counsel.

At the evidentiary hearing held on January 7, 2005, defense counsel properly conceded that statements made to Croner by Hinkson on or before November 30, 2004, may not be suppressed because Croner was not acting as a

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 7**

Government agent during that time. The Court agrees and holds as a matter of law that this evidence was lawfully obtained. The Ninth Circuit has recently reaffirmed that statements made to a witness by an accused before the witness meets "with the prosecution team cannot be the basis of a *Massiah* violation." *Randolph v. People of the State of Calif.*, 380 F.3d 1133, 1144 (9th Cir. 2004) (citing *Maine v. Moulton*, 474 U.S. 159, 176 (1985)). Croner did not discuss Hinkson with any law enforcement official until his November 30, 2004, meeting with Agent Long. The Court therefore DENIES Defendant's motion to suppress evidence of statements made to Croner by Defendant on or before November 30, 2004.

The only evidence that may be subject to suppression is the testimony of Croner regarding statements that Defendant allegedly made between November 30 and December 8, 2004. The Defendant argues that by returning Croner to the same jail housing unit that he shared with Hinkson after his initial interview by Agent Long, the Government impermissibly planted a Government agent to elicit further incriminating statements. He asserts that there is no evidence that Croner had to be returned to the same jail unit and that, after meeting with the Government, Croner would have too much incentive to refrain from wrongfully eliciting more information. The Government acknowledges that after the

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS - 8**

November 30, 2004, meeting, Croner "could perhaps fairly" be considered a Government agent, but asserts that his status as a Government agent is not conclusive on resolving the issue of suppression. The United States argues that because Croner did not ask questions of Hinkson, he did not deliberately elicit information and so the Sixth Amendment was not violated.

The Sixth Amendment right to counsel extends to prohibit the Government from "deliberately eliciting" incriminating statements from the defendant once the right has attached. *Id.* at 1143 (citing *Massiah*, 377 U.S. at 206). This prohibition includes the "use of jailhouse informants who relay incriminating evidence from a prisoner to the government." *Id.* (citing *United States v. Henry*, 447 U.S. 264 (1980)). To show that the Sixth Amendment has been violated, the Defendant "must show that [the witness] was acting as an agent of the [Government] when he obtained the information from [Defendant] *and* that [the witness] made some effort to 'stimulate conversations about the crime charged.'" *Id.* at 1144 (emphasis added). As Justice Powell noted in his concurrence in *Henry*, "*Massiah* does not prohibit the introduction of spontaneous statements that are not elicited by governmental action." 447 U.S. at 276 (Powell, J., concurring).

When statements to an informant made by the defendant are "unsolicited" and "spontaneous" they are not wrongfully obtained. *Randolph*, 380 F.3d at 1143

MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS - 9

(citing *Kuhlmann v. Wilson*, 477 U.S. 436 (1986)).  To show a violation "the
defendant must demonstrate that the police and their informant took some action,
beyond mere listening, that was designed deliberately to elicit incriminating
remarks." *Kuhlmann*, 477 U.S. at 459.  There is no general Sixth Amendment
prohibition against placing a jail cell informant in a cell with an accused for the
purpose of obtaining information. *See id.* at 456.   In *Kuhlmann*, the Supreme
Court held that statements made to a jail house informant, who acted as a
"listening post" after being "placed in close proximity [with an accused] but made
no effort to stimulate conversations about the crime charged[,]" were admissible
and did not violate the Sixth Amendment.  477 U.S. at 456, n.19 (internal citation
and quotation omitted).  The Supreme Court allowed the statements of a witness
who had agreed to act as a police informant prior to being placed into a cell with
the accused where the police had intentionally put the informant into the jail cell
to passively listen to the accused to determine the names of other perpetrators. *Id.*
at 439, 456.  Therefore, so long as an informant, even an informant intentionally
planted by law enforcement, remains a passive listener, his subsequent testimony
as to the content of the statements of an accused is admissible in the prosecution's
case-in-chief.

 The question of whether Croner must be considered a Government agent in

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 10**

these circumstances is close.  In deciding this issue, the "government's intent or overt acts [are not] important; rather, it is the likely result of the government's acts."  *Randolph,* 380 F.3d at 1144 (citing *Henry*, 447 U.S. at 271) (internal quotation omitted).  An explicit agreement to compensate a witness is not necessary to show that a witness is a government agent.  *Id.*  The evidence before the Court here regarding what was ultimately offered to Croner by the Government, and when such offers may have been made, is limited to the Government's statement of the facts contained in Croner's Cooperation Agreement dated December 22, 2004.

However, even if Croner were acting as a Government agent, the Government did not violate the Sixth Amendment *per se* by returning Croner to the jail cell he shared with Hinkson.  *See Kuhlmann*, 477 U.S. at 456.  The Defendant must show that Croner stimulated conversation that led to the statements.  The facts adduced at the hearing on January 7, 2005, show that Croner did not make any effort to stimulate conversation about the crime and so Defendant fails to demonstrate that the Government "engaged in conduct that, considering all of the circumstances, is the functional equivalent of interrogation." *See Henry*, 447 U.S. at 277 (citing *Brewer v. Williams*, 430 U.S. 387, 399 (1977)) (Powell, J., concurring).

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 11**

The evidence further establishes that Croner did no more than listen and report. He did not ask questions of Hinkson, nor did the Government at any time ask Croner to elicit any information from Defendant. Instead, Croner was persistently advised by his attorney and the Government not to ask any questions of the Defendant but to simply listen to what Hinkson said. Croner complied with these directions. Defendant has presented no facts to refute this evidence or which suggest any other action by Croner that could reasonably be construed as creating the functional equivalent to an "indirect and surreptitious interrogation." *See Kuhlmann*, 477 U.S. at 458 (citing *Henry*, 447 U.S. at 273) (internal quotation omitted).

Therefore, the Court holds from the facts of record here that the Government did not violate *Massiah* and *Henry* by returning Croner to the same jail cell with the Defendant nor did Croner conduct the functional equivalent of an interrogation. Croner followed the direction of his attorney and the Government to merely passively listen to Hinkson's statements and did not direct any conversation to the topic of Hinkson's criminal charges. Compare *Randolph*, 380 F.3d at 1146 (finding that the witness deliberately elicited information on the basis of witness' testimony that he had asked questions and "led on" the accused to obtain information).

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS - 12**

Furthermore, the Court sees no basis on which to find that the Government "intentionally created a situation likely to induce [Defendant] to make incriminating statements without counsel's assistance." *See id.* (quoting *United States v. Kimball*, 884 F.2d 1274, 1278 (9th Cir. 1989)). There is no evidence that Defendant and Croner had any special relationship beyond the pure coincidence of having their prior criminal tax cases before the same district judge that would suggest Defendant might be inclined to confide in Croner. *Cf. Moulton*, 474 U.S. at 178-80 (holding that the Sixth Amendment was violated where an accomplice acting as an undercover agent for the state discussed the crime with the accused and repeatedly asked questions regarding the details of the crime). Instead, the Court finds from the evidence that Hinkson likes to talk and spoke to others in his housing unit besides Croner.

The Government is under no obligation to change the housing of an inmate immediately after having made statements to a law enforcement officer about a fellow inmate. Indeed, such an obligation would not only be logistically onerous to the Government, but could threaten the safety of such a witness, whose fellow inmates might be suspicious of a sudden change in housing. Moreover, the Government did not leave Croner in the jail housing unit with Defendant for an unreasonably long period of time. Only eight days passed between Croner's

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS - 13**

meeting with Agent Long and his meeting with the prosecution team. Croner was moved to a different location within 24 hours of speaking with the prosecution team.

For these reasons, the Court finds that Croner, although arguably a Government agent after his first meeting with Agent Long on November 30, 2004, did not deliberately elicit incriminating evidence from Defendant and holds that Hinkson's rights under the Fifth and Sixth Amendments have not been violated. The Defendant's motion to suppress the alleged statements is DENIED.

## II.   Motion for Discovery.

The Defendant also moves the Court to order discovery of the two F.B.I. Form 302 reports that were prepared following interviews on November 30 and December 8, 2004, of Chad Croner regarding the statements Defendant allegedly made to Croner during their joint incarceration at the Ada County Jail. Defendant asks the Court to consider whether these reports are subject to discovery under the Jencks Act, 18 U.S.C. § 3500, and alternatively, under *Giglio v. United States*, 405 U.S. 150 (1972).

At the January 7, 2005, evidentiary hearing held on the motion to suppress Croner's testimony, the Court ordered the Government to submit the reports for *in camera* review. Having considered the contents of the documents, the Court finds

**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 14**

that the reports are not discoverable under the statute because they are not

"statements" under § 3500(e).  Nor are they discoverable under *Giglio* because

they contain nothing but inculpatory information and, at this stage of the case, they

are not impeaching.  The Court will consider ordering disclosure mid-trial

depending upon how the evidence is presented when Croner testifies.  Therefore

the Court DENIES Defendant's motion for pretrial discovery.

## ORDER

For the reasons set forth above, the Defendant's Motion to Suppress

Statements to Chad Croner (Docket # 119) and Motion for Discovery (Docket #

120) are DENIED.

IT IS SO ORDERED.

DATED this 9th day of January, 2005, at Boise, Idaho.


RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation


**MEMORANDUM DECISION AND ORDER re MOTION to SUPPRESS  - 15**