IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CR-04-127-S-RCT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| DAVID ROLAND HINKSON, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the Defendant's Rule 33 Motion for New Trial or, Alternatively, Motion to Dismiss (Docket # 224), the Government's brief in opposition (Docket # 234), and Defendant's reply (Docket # 237). For the reasons discussed below, the Court DENIES the Defendant's motions.

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 1**

## DISCUSSION

### I.   Motion for New Trial for Newly Discovered Evidence

The Defendant moves the Court for a new trial under Fed. R. Crim. P. 33(a) on the basis of alleged newly discovered evidence.  He argues that this new evidence proves that witness Elvin J. Swisher produced a forged military record document to the Court (the "amended DD-214").  The Defendant fails to meet his burden of demonstrating a right to a new trial.

To warrant a new trial on the basis of new or newly discovered evidence the Defendant:

> must show that (1) the evidence is newly discovered; (2) the failure to discover the evidence is not attributable to a lack of diligence by the defendant; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that a new trial would probably result in an acquittal.

*United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003) (citing *United States v. Jackson*, 209 F.3d 1103, 1106 (9th Cir. 2000)).  However, allegations that a government witness made untruthful statements as a basis for showing "newly discovered evidence affecting his credibility at the trial" are generally "merely cumulative or impeaching" and not ordinarily "an adequate basis for the grant of a new trial." *Mesarosh v. United States*, 352 U.S. 1, 5 (1956) (internal quotation and

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 2

citation omitted).

Initially, the Court finds that Defendant is unable to establish that the failure to discover this evidence was not due to his counsel's lack of diligence. Defense counsel acknowledged on the record during Swisher's testimony that the Defense had been investigating Swisher's military record for "quite some time" because counsel for Hinkson were suspicious, given the witness' date of birth (January 13, 1937), as to whether he had actually served in the Korean War during a time when hostilities were still ongoing such that Swisher could have received the battlefield injuries about which he had previously testified in other proceedings. *See* Sidebar Conf., Trial Tr., Vol. 5 (January 14, 2005), pp. 1113:19-1114:8. Swisher testified to receiving injuries from his military service in a prior Idaho state court civil case deposition (to which Hinkson was a party), taken by defense attorney Wesley Hoyt on October 11, 2004 (Gov't Opp. Br. Exh 2, p. 43:18-20), and two grand jury appearances, on April 16, 2002 (*id.*, Exh. 3, p. 4:21-24), and on February 10, 2004 (*id.* Exh. 4, pp. 3:11-18, 5: 12-15), leading to the indictments on which Hinkson was subsequently found guilty. Thus, the Court finds that defense counsel had ample time to investigate Swisher's record prior to trial, but was not diligent in pursuing the issue.

Further, the Court notes that most of the proffered evidence is not "newly

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 3**

discovered" because the Defendant was in possession of the bulk of the evidence at trial. The only new evidence is: (1) the affidavit of Retired Colonel W. J. Woodring, Jr., which declares that his signature on Swisher's "amended" DD-214 (produced by Swisher on the witness stand at trial) is forged; and (2) the affidavit of Chief Warrant Officer W. E. Miller, which is itself only the officer's interpretation of documents that the Defendant possessed during trial. The substance of both proffered documents is not new and is generally cumulative of previously available information. Also, the proffered evidence is impeachment evidence and so is not a valid basis for a new trial. *See Waggoner*, 339 F.3d at 919 (rejecting evidence cited by the defendant in support of his new trial motion as "cumulative, impeachment-related, or both").

Most importantly, the proffered "new" evidence is not material to the issue at trial, nor would a new trial probably result in an acquittal, because the evidence is inadmissible. As the Court previously held on the record at trial (Trial Tr. pp. 2605:18 - 2612:3) and now reiterates, admission of the proffered documents and testimony is still prohibited by Fed. R. Evid. 608(b), which bars introducing extrinsic evidence of the witness' past conduct.[1] Rule 608(b) allows a

---

[1]Defendant asserts that the Court gave him the "Hobson's Choice" of reopening cross-examination or calling a military records custodian to testify. *See* Defendant's Rule 33 Motion at 4. The Court gave Defendant no such choice. The

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 4

cross-examiner to impeach a witness by asking him about specific instances of past conduct which are probative of his veracity or "character for truthfulness or untruthfulness." *United States v. Abel*, 469 U.S. 45, 55 (1984); *see also United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002). However, Rule 608(b) "limits the inquiry to cross-examination of the witness . . . and *prohibits* the cross-examiner from introducing extrinsic evidence of the witness' past conduct." *Abel*, 469 U.S. at 55 (emphasis added); *see United States v. Brooke*, 4 F.3d 1480, 1484 (9th Cir. 1993) (noting under the "explicit" rule of Rule 608(b), a party is "stuck with whatever response" is given in cross-examination and may not impeach through extrinsic evidence). The Court gave Defendant the opportunity to reopen cross-examination by recalling Swisher on the veracity of his military

---

Court asked defense counsel to provide legal authority that would compel the Court to admit extrinsic evidence such as the testimony of a records custodian in spite of Rule 608(b)'s prohibition against such extrinsic evidence. *See* Trial Tr., Vol. 10 (January 24, 2005), pp. 2310:8-24, 2319:14-18, 2323:4-10. Even after such prompting by the Court, defense counsel was unable to cite to a case establishing legal authority to compel such evidence. The Court therefore exercised its discretion under Rule 608(b) and gave the Defendant the option of reopening cross-examination or letting the record stand with all of the testimony relating to the military commendation stricken from the record. *See* Trial Tr., Vol. 10 (January 24, 2005), pp. 2607:23 - 2612:3. The Court ruled that no extrinsic evidence on the issue of Swisher's military record was admissible because it would require a "mini-trial" on a collateral issue, which necessarily precluded admission of testimony of a records custodian to interpret the Department of Defense form and Swisher's military file. *See id.*, p. 2610:5-13.

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 5**

record, but warned defense counsel that they would be stuck with Swisher's answers and could argue his credibility in closing. *See* Trial Tr., Vol. 10 (January 24, 2005), pp. 2607:23 - 2612:3.

Defendant attempts to recharacterize the evidence as central to the Government's case by arguing that Swisher's silent wearing of a miniature Purple Heart lapel pin on his breast-pocket while testifying made his military record "intrinsic to both his credibility and the [G]overnment's theory of prosecution." The argument is meritless because the Government elicited on direct examination only that Hinkson *believed* that Swisher had substantial combat experience; whether or not Swisher had *actually* served in combat or was wounded and decorated was never relevant to the key question as to whether Hinkson thought Swisher to be a potential contract killer who would willingly agree to murder the three federal officials Hinkson wanted dead. The proffered evidence is therefore inadmissible extrinsic evidence under Rule 608(b) because the *only* issue to which this evidence was relevant at the trial was Swisher's character for truthfulness.

Defendant's allegation that the Court unconstitutionally limited his ability to cross-examine Swisher on this issue substantially mischaracterizes what occurred at trial. Even though all evidence regarding Swisher's military record was stricken from the record, the Court *allowed* the Defense the opportunity to reopen cross-

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 6

examination of Swisher to permit limited inquiry into the allegedly forged military document.  Moreover, the Court expressly granted the Defendant the right to reference the allegedly impeaching documents during its cross-examination.  Trial Tr., Vol. 10 (January 24, 2005), pp. 2607:23-25, 2610:14-21.  *See United States v. Jackson*, 882 F.2d 1444, 1448-49 (9th Cir. 1989) (holding that government's reference to a written statement was admissible under Rule 608(b) where the government did not introduce the statement into evidence but instead questioned the witness about the contents of the document).  Defendant therefore had ample opportunity to create doubt in the minds of the jurors as to Swisher's truthfulness and, in spite of the Court's clear authorization to reopen the issue to allow further cross-examination of this key Government witness, the Defendant chose not to do so.  *See* Colloquy with defense counsel Thomas J. Nolan on January 25, 2005 (not yet transcribed).  The Defendant cannot now claim that he is due a new trial simply because he regrets his strategic decision not to reopen the attack to further cross-examine Swisher.

The Court concludes that Defendant's argument that the proffered "new" evidence demonstrates fraud on the Court is irrelevant here.[2]  The inquiry is

---

[2]Moreover, Defendant's fraud argument is without merit.  As the Court found when it rejected this argument at trial, the Court is not the finder of fact here; that is the role of the jury.  Trial Tr., Vol. 10, p. 2608:13-17.  In this case, the jury

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 7

whether a new trial is warranted by the proffered evidence.  As discussed above, the proffered evidence is inadmissible, immaterial, and would not be likely to result in an acquittal.  *See Waggoner*, 339 F.3d at 919.  Thus, Defendant does not meet his Rule 33 burden.  *See id.*  The evidence does not tend to show any bias or prejudice Swisher may have had against the Defendant, nor does it go to establishing any other motivations under which he may have been acting.  *Cf. United States v. Schoneberg*, 396 F.3d 1036, 1041-42 (9th Cir. 2005) (holding that the district court abused its discretion in limiting cross-examination on witness' possible incentive to lie).

Defendant argues that wearing a button was "silent testimony" (notwithstanding the Court's instruction to the jury to disregard any consideration of Swisher's Purple Heart testimony on cross-examination), but does not explain clearly as to what.  Defendant seems to be arguing that the jury would be more likely to believe the testimony of a combat veteran than a non-combat veteran; an

---

has not been affected by the allegedly fraudulent representation because the jurors never saw the documents in question, the short line of questioning on this issue was stricken from the record, and a curative instruction was immediately given. *See* Colloquy with Counsel and Instruction Given to Jury, Trial Tr., Vol. 5 (January 14, 2005), pp. 1121:17 - 1132:9.  The Court therefore found that Swisher's alleged misconduct did not corrupt or "harm the integrity of the judicial process" and so as a matter of law does not constitute fraud on the Court. *See In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999); Trial Tr., p. 2609:3-6.

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 8

irrational assumption unsupported by any proffer. This speculation is simply not sufficient to warrant a new trial.

Finally, the short amount of testimony before the jury regarding this issue was stricken from the record, and the jury never saw *any* of the documentation that was marked for the record at sidebar or reviewed *in camera*, including the contested Form DD-214 (Def. Exh. M). Trial Tr., Vol. 5 (January 14,2005), pp. 1124:25 - 1125:14. The document submitted by Swisher has therefore had no practical effect on the jury deliberations in this case. *See Gibson v. Ortiz*, 387 F.3d 812, 822 (9th Cir. 2004) (stating that juries are presumed to follow the court's instructions).

The Court also reiterates its prior ruling at trial that the evidence of Swisher's military record is inadmissible under Rule 403. Trial Tr., pp. 2609:7 - 2612:3. Rule 403 bars evidence whose probative value is substantially outweighed by the danger of confusion of the issues, misleading the jury, or by considerations of undue delay and waste of time. *See* Fed. R. Evid. 403. Authentication and laying a foundation for Defendant's proffered extrinsic evidence would have wasted considerable trial time on a confusing, tangential issue unrelated to the factual issues to be resolved by the jury. *See United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992) ("The purpose of barring extrinsic evidence [under Rule

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 9

608(b)] is to avoid holding mini-trials on peripherally related or irrelevant matters.").

Defendant's attempt to impeach the jury verdict here with this inadmissible evidence is equally unavailing. He asserts that if the jury had considered the "new" evidence, at least one of the jurors would not have found him guilty. He proffers an affidavit signed by one of the jurors, Ben S. Casey, which states that Casey would not have found Hinkson guilty had he known that Swisher "was not a credible witness." *See* Def. Rule 33 Motion, Exh. 3 (hereinafter "Casey Affidavit"). A jury verdict may certainly be impeached on the basis of juror misconduct where a juror relies upon extrinsic evidence not admitted at trial. *See, e.g.*, *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991). But that did not happen here. Defendant offers no legal authority for his proposition that a jury verdict may be impeached on the basis of evidence that would be inadmissible at a new trial. Indeed, the argument is nonsensical. Whether inadmissible evidence would have affected the jury deliberations is simply irrelevant to the validity of a jury verdict.

Furthermore, the Casey Affidavit is itself inadmissible under Fed. R. Evid. 606(b), which states that:

> [a] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 10**

> that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . .

Fed. R. Evid. 606(b). Rule 606(b) restricts the admission of juror testimony to only "facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering." *United States v. Pimentel*, 654 F.2d 538, 542 (9th Cir. 1981); *see Hard v. Burlington Northern R.R. Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989) ("Rule 606(b) bars not just juror testimony but evidence of any sort as to a statement by a juror concerning jury deliberations, so long as a juror would be barred from making the same statement in the form of testimony in court."). Through his affidavit, Casey discusses his mental processes in his deliberations, stating "I relied upon the credibility of Mr. Swisher when I cast my vote to convict Mr. Hinkson . . . ." Casey Affidavit, ¶ 4. He further discusses on what basis he might have changed his decision. *Id.*, ¶¶ 3, 5. These statements concerning his deliberations and reasoning are inadmissible to impeach a verdict. *See United States v. Rohrer*, 708 F.2d 429, 434 (9th Cir.1983) (finding affidavits regarding jurors' individual or collective thought processes inadmissible under Rule 606(b)).

Ultimately, the Federal Rules of Evidence would not apply any differently in a new trial; the proffered extrinsic evidence would remain inadmissible, and therefore would neither be material to the issues necessary to be decided at trial nor

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 11

probably result in an acquittal.  *See Waggoner*, 339 F.3d at 919.  The Court granted the Defendant his chance to reopen cross-examination on Swisher's military record to the extent allowed by Rule 608(b), but he nonetheless chose not to do so.  He cannot now complain that he was prejudiced by his tactical decision.  For these reasons, the Court DENIES Defendant's motion for a new trial on the basis of newly discovered evidence.

## II.   Motion for New Trial for Government's Failure to Disclose

Although not clearly presented as a motion for such, Defendant also argues that he should be granted a new trial on the basis that the Government failed to meet its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  The Court may grant a motion for a new trial "if the interest of justice so requires."  *See* Fed. R. Crim. P. 33.  The Court will therefore treat the argument as a *Brady/Giglio* motion.

A prosecutor has a constitutional duty to disclose material, exculpatory evidence to the defense, regardless of whether defense counsel makes a specific request.  *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see Brady*, 373 U.S. at 87.  The duty extends not only to information relevant to guilt, but also to evidence that would tend to impeach the prosecution's witnesses.  *Bagley*, 473 U.S. at 676; *Giglio*, 405 U.S. at 154.  A breach of that duty violates due process when: (1) the

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 12**

prosecution suppressed exculpatory or impeachment evidence that was actually or constructively in its possession, regardless of the good or bad faith of the prosecutor; and (2) the suppressed evidence was material. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *Brady*, 373 U.S. at 87. The defendant must also demonstrate that prejudice ensued. *United States v. Si*, 343 F.3d 1116, 1122 (9th Cir. 2003).

A necessary corollary is that the Government has no duty to disclose what it did not know and had no duty to learn. *See, e.g., United States v. Plunk*, 153 F.3d 1011, 1027 (9th Cir.), amended by 161 F.3d 1195 (9th Cir. 1998) (finding no *Brady* duty to disclose information in Federal Public Defender's files regarding prior inconsistent statements made by a government witness because *Brady* duty extends only to information in the possession or control of law enforcement personnel), *overruled on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000); *see also Hollman v. Wilson*, 158 F.3d 177, 180-81 (3d Cir. 1998) (concluding there was no duty to disclose witness' full criminal history where part of the history was inaccessible due to an administrative mistake); *Vega v. Johnson*, 149 F.3d 354, 363 (5th Cir. 1998) (concluding there was no duty to disclose pending indictment of a prosecution witness in another county where defendant did not demonstrate that the prosecution could have discovered the

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 13**

indictment with a routine criminal history check).

Here, the Government was not actually in possession of the evidence in question prior to the day of Swisher's trial testimony. Even after Swisher gave prosecutor Sullivan the amended DD-214 document, it was not readily apparent that it could be impeaching evidence. During his testimony, Swisher was wearing a small Purple Heart lapel pin. At side bar, defense counsel explained that they had been trying to "dig into" Swisher's military history "for quite some time" and wanted to ask Swisher about the pin and his military record. The Court agreed over Government objection. Trial Tr., Vol. 5 (January 14, 2005), pp. 1113:19 - 1116:12. When defense counsel confronted Swisher on January 14, 2005, with a letter they had just received that afternoon during trial from the St. Louis, Missouri, U.S. National Archives and Records Administration's National Personnel Records Center, Military Personnel Records Branch (hereinafter "National Personnel Records Center"), which indicated that Swisher might not be entitled to a Purple Heart, Swisher pulled the "amended" DD-214 in question out of his jacket. Def. Exh. M. The DD-214 indicated that he was entitled to the commendation. Only at that point did the DD-214 document's possible

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 14**

impeachment value become apparent.[3] Therefore, the key inquiry is whether the Government had an obligation prior to trial to investigate Swisher's military record or whether such knowledge should be imputed to it. Otherwise, there has been no *Brady/Giglio* disclosure violation.

The contours of a prosecutor's duty to investigate or collect additional evidence are not entirely clear. Due process requires that a prosecutor "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437. Case law identifies three general situations in which the prosecution will be found to have "suppressed" exculpatory information of which it was actually unaware. First, the prosecution may fail in its due process obligation to investigate where questionable evidence on its face "would alert anyone . . . to the strong possibility" that the evidence was false. *Commonwealth of N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1117-18

---

[3]Outside of the jury's presence, defense counsel then moved for a mistrial, which the Court denied, finding that "there was no reason for the Government to believe with regard to [the DD-214 in question] that the contents of the [DD-214] would be impeaching in any way, shape or form." Trial Tr., Vol. 5 (January 14, 2005), pp. 1127:24 - 1128:13. The Court found further that "until the receipt of that exhibit" the Government "had no reason to believe that [the DD-214] was disclosable under *Brady* or *Giglio* because it was not impeaching." *Id.*, p. 1129:11-15. At defense counsel's request, the Court then ordered the jury to disregard all of the testimony regarding the alleged military commendation. *Id.*, pp. 1128:23 - 1132:9.

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 15**

(9th Cir. 2001) ("[A] prosecutor [must] act when put on notice of the real possibility of false testimony."). A prosecutor may not "refuse[] to search for the truth and remain[] willfully ignorant of the facts." *Id.* at 1118.

Second, knowledge may be imputed to the prosecutor where the impeaching evidence is known to other members of the prosecution team. Imputed knowledge may include information known to other prosecutors in the same office, in the hands of the police, or possessed by other investigative agencies involved in the prosecution. *See, e.g.*, *Kyles*, 514 U.S. at 437-38 (police); *United States v. Steel*, 759 F.2d 706, 714 (9th Cir. 1985) (imputing knowledge of information held by FBI agent to prosecutor because investigative officers were also part of the prosecution). It might also include agencies with special interest in the prosecution. *See, e.g.*, *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (imputing information known to the FDA to the prosecutor in prosecution for conspiracy to defraud the FDA because, as the agency interested in the prosecution, the FDA was "part of the prosecution" for *Brady* purposes).

Third, knowledge may be imputed to the prosecutor, or a duty to search may be imposed, in cases where a search for readily available background information is routinely performed, such as routine criminal background checks of witnesses. *See, e.g.*, *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997); *United States v.*

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 16**

*Strifler*, 851 F.2d 1197, 1201-02 (9th Cir. 1988); *United States v. Cadet*, 727 F.2d 1453, 1467 (9th Cir. 1984); *see also United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991).

None of these situations existed here. The Court finds as matter of fact that the Government was not on notice and had no reason to know that the amended DD-214 document (Def. Exh. M) first presented by Swisher to one of the prosecutors, Michael Sullivan, on the morning of his testimony, was possible impeachment evidence until after defense counsel confronted Swisher with the letter received later that afternoon from the National Personnel Records Center during his cross-examination. Until that time, there was no reason for the Government to suspect that the document Swisher had given them earlier that day was not authentic or that it might become involved in his testimony in the criminal trial. On its face, the document looks authentic, and the Court finds that the Government prosecutors and their investigative agencies were not in possession of any conflicting information. Therefore, the Court cannot impose a duty to investigate where there was no reason to question this tangential evidence whose potential impeachment value was not apparent when first seen that morning. *Cf. Bowie*, 243 F.3d at 1118.

Next, imputed knowledge cannot be invoked by the Defendant here because

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 17

apparently the only agency which had the information was the National Personnel Records Center in St. Louis, which has no association or interest in this criminal case. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (declining to impose an unlimited duty on a prosecutor to inquire of other governmental offices not working with the prosecutor's office on the case, because to do so would be to adopt a "monolithic view of the government" that would lead to prosecutorial paralysis). Finally, there is no suggestion that it would be routine for prosecutors or law enforcement officers to run background records checks that would include a witness' decades-old archival military records.

Furthermore, the Court can find no case law extending the duty to investigate for *exculpatory* evidence to fully encompass a duty to investigate for all *impeachment* evidence, so it is unclear whether such an obligation would even apply here. Regardless, the Court concludes that even if a duty to investigate potentially impeaching evidence exists, no such obligation was violated here. The prosecutors did not have an obligation to investigate Swisher's military background prior to the trial because they were not on notice that it might become relevant, let alone potentially impeaching, and the Court also finds that there was no evidence of bad faith in failing to investigate. The Court notes that defense counsel asserted at trial that they had been suspicious of Swisher's military history

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 18

for a long time, but they apparently never asked the Government to conduct further investigation.

At trial, the Government only argued that Defendant had reason to believe that Swisher had a combat record; Swisher's actual military record was simply not an issue in the trial until defense counsel chose to make it one. Had defense counsel communicated their suspicion about Swisher to the Government at an earlier time, the Government might have been on notice. However, by making the strategic decision of keeping secret their suspicion, defense counsel lost their opportunity to prompt the Government earlier to investigate Swisher's military background.

Finally, Defendant fails to establish that he has been prejudiced by the late disclosure of Swisher's military record. *See Stricker v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice exists only "if the withheld evidence is material to the defendant's guilt or punishment, such that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Si*, 343 F.3d at 1122 (internal quotation marks and citation omitted). As discussed above, the information was made available to the Defendant as soon as it came into the Court's and the Government's possession. The evidence itself was inadmissible, but the Defendant was granted the

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 19**

opportunity to reopen cross-examination and attempt to impeach Swisher by questioning him on the basis of the military documents received mid-trial from St. Louis. The Defendant decided not to use the disclosed information by declining to reopen cross-examination. He cannot now argue that he was prejudiced by the lack of evidence he possessed but chose not to use. For these reasons, the Court finds and concludes that there has been no *Brady/Giglio* disclosure violation, and Defendant's motion for a new trial on this basis is DENIED.[4]

## III.   Motion for Dismissal

The Defendant moves the Court alternatively for a complete dismissal. He argues that the Government committed prosecutorial misconduct by failing to investigate and disclose Swisher's military record. He argues at various points that the Government engaged in fraud, obstruction of justice, knowing use of perjured testimony, and asserts that the Government's conduct may constitute a criminal act.

Dismissal for prosecutorial misconduct violating a defendant's due process

---

[4]The Court notes also that even if a *Brady* violation regarding disclosure of Swisher's military record occurred, a new trial would still not be warranted. A new trial is only appropriate if, "weighed as a whole, the evidence characterized as *Brady* material" undermines the Court's "confidence in the jury verdict." *Waggoner*, 339 F.3d at 919 n.5 (citing *United States v. Sarno*, 73 F.3d 1470, 1506 (9th Cir. 1995). The alleged *Brady* evidence here is "marginal, ambiguous, cumulative, inadmissible, unreliable, inculpatory, irrelevant, or of negligible probative worth" and so fails to meet this standard. *Id.*

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 20

right "requires (1) flagrant misbehavior and (2) substantial prejudice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993). The Defendant fails to establish either. His allegations of misconduct are unreasonably inflammatory and without factual foundation. As noted above, the Government did not fail in its disclosure obligations. Furthermore, there is no factual link whatsoever between the Government's conduct here and any allegedly wrongful conduct on the part of witness Swisher. There is no indication that the Government had any awareness that any of Swisher's testimony regarding his military background could be false prior to defense counsel's mid-trial receipt of the surprise letter from the National Personnel Records Center. *Cf. United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (noting that to prevail on a claim that the prosecution presented false evidence, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material"). The Government did not receive a copy of the allegedly forged DD-214 until the morning of Swisher's testimony; they certainly had no opportunity, or any reason, to investigate the document at that point. The Court finds that at no point did the Government's conduct amount to "flagrant misbehavior." *See Kearns*, 5 F.3d at 1253.

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 21

Furthermore, Defendant fails to demonstrate "substantial prejudice." *See id.* Dismissal is "an appropriate sanction for a constitutional violation only where less drastic alternatives are not available." *Id.* 1254-55 (noting that granting a continuance and allowing additional cross-examination may be sufficient sanction); *see Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993) ("Dismissal of an indictment is considered a 'drastic step' and is generally disfavored as a remedy."). Defendant fails to allege any prejudice from the delay in disclosure of the information regarding Swisher's military record, the full extent of which both the Government and the Defendant acquired at the same time. Whatever potential prejudice might have arisen from the Defendant not receiving the additional information at an earlier time was sufficiently mitigated by the Court's offer granting the Defendant the opportunity to reopen cross-examination of Swisher to attempt to impeach his prior testimony on the basis of the complete military records. Therefore, Defendant's motion for dismissal is DENIED.

## IV.   Motion for Recusal

The Defendant also asks this Court to recuse itself from this case, arguing that my impartiality may be reasonably questioned and that recusal is required under 28 U.S.C. § 455(a). 28 U.S.C. § 455(a) requires that a United States judge "disqualify himself in any proceeding in which his impartiality might reasonably

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 22**

be questioned." *Id.* Recusal is required when "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *See Moideen v. Gillespie*, 55 F.3d 1478, 1482 (9th Cir. 1995). Therefore, recusal is justified "either by actual bias or the appearance of bias." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993).

However, no reasonable person could reach the conclusion that recusal is required here in the face of Defendant's repeated and persistent misconduct and abuse of the legal system. Recusal is generally not required where a party attempts to *force* a judge to recuse himself. As the Ninth Circuit has acknowledged:

> [i]t has long been established [] that a party cannot force a judge to recuse himself by engaging in personal attacks on the judge: Nor can that artifice prevail, which insinuates that the decision of this court will be the effect of personal resentment; for, if it could, every man could evade the punishment due to his offenses, by first pouring a torrent of abuse upon his judges, and then asserting that they act from passion . . . .

*Standing Committee on Discipline v. Yagman*, 55 F.3d 1430, 1443-44 (9th Cir. 1995) (internal quotation marks and citation omitted).

The Ninth Circuit has been fortunate in not yet having to address whether alleged death threats made against a judge warrants forced recusal. Other circuits have had to address the issue. In *United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994), the Tenth Circuit recognized that, while in some circumstances recusal

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 23**

is necessary, various factors may suggest that where, as here, the alleged death threats against a judge are made only to impact the judicial proceeding they should not force a recusal.  The Tenth Circuit in *Greenspan* noted that:

> if a death threat is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal, particularly if he thereafter affirmatively seeks a recusal[;]
> [or]
> *if a defendant were to make multiple threats to successive judges or even to multiple judges on the same court*, there might be some reason to suspect that the threats were intended as a recusal device.

*Greenspan*, 26 F.3d at 1006 (emphasis added).  This is what happened here.

The Second Circuit also addressed this issue and acknowledged that, even if they assumed that a threat was credible, recusal was not required where death threats against the judge "may well have been nothing more than an attempt to harass the government and divert resources." *United States v. Yousef*, 327 F.3d 56, 169-70 (2d Cir. 2003).

I find as a matter of fact and hold that, regardless of whether the alleged threats against me here ever had any credibility, the Defendant's actions are clearly manipulative and made only in an attempt to obtain a different judge, delay the proceedings, to harass, or for other vexatious or frivolous purposes, and therefore my recusal is not required.  I base my holding on the following findings.

Defendant has previously engaged in protracted frivolous civil litigation in

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 24**

Federal District Court seeking to abuse the legal process to harass and intimidate federal officials from performing their duties. *See Hinkson v. Hines, et al.*, No. 02-171-N-LMB (Hinkson's civil rights (*Bivens*) litigation in U.S. District Court filed against Assistant United States Attorney (A.U.S.A.) Nancy Cook, Internal Revenue Service (I.R.S.) Special Agent Steven Hines, I.R.S. Revenue Agent Jerry Vernon, and attorney Dennis Albers, which was promptly dismissed by United States District Judge Edward J. Lodge). Additionally, Defendant has in the past filed administrative complaints against several of these and other federal officers with the Commissioner of Internal Revenue, the Chief Postal Inspector, a District Director of the I.R.S., and the U.S. Attorney General. He has also filed internal affairs-type complaints with the Office of Inspector General of the Department of the Treasury in an effort to intimidate and retaliate against Revenue Agent Jerry Vernon and C.I.D. Special Agent Steven Hines. He also filed complaints with the U.S. Department of Justice Office of Professional Responsibility against A.U.S.A. Nancy Cook.

After being indicted in the Tax Case, *United States v. David Roland Hinkson*, No. CR-02-0142-C-EJL, the Defendant successfully forced the recusal of Judge Lodge and forced A.U.S.A. Cook off the case as his prosecutor by engaging in the solicitation of the judge's murder and the murder of the prosecutor and lead

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 25**

case agent from the I.R.S. as the jury later found true in this case. He also

unsuccessfully sought recusal of United States Magistrate Judge Mikel Williams,

who handled Hinkson's initial bail and detention matters in the case (subsequently

affirmed by this Court and the Ninth Circuit Court of Appeals). *See* Docket Nos.

9, 14.

As his baseless administrative complaints and frivolous civil lawsuits were

judicially dismissed, denied, or deemed unfounded by the various government

agencies conducting civil, criminal, and administrative enforcement proceedings

against him, Defendant turned to soliciting acts of violence against federal officers

resulting in the return of the Superceding Indictment on which Defendant has been

found guilty of three counts.

There is no question in the Court's mind that Defendant has been attempting

to orchestrate my recusal as the current trial judge because of his dissatisfaction

with the guilty verdict in the Tax Case, *United States v. Hinkson*, No. 02-CR-0142-

C-RCT, over which I also presided, and as a result of the guilty verdict and adverse

rulings made against him in pretrial and mid-trial motions in the Solicitation and

Threats Case, No. 04-CR-0127-S-RCT.

In the face of this record, extending back for more than five years of

vexatious conduct, the only possible conclusion this Court can draw is that

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 26**

Defendant is once again attempting to "game the system" and pervert the due administration of justice by engaging in these kinds of stalling tactics.

Defendant attempted shortly before trial and well past the deadline set for the filing of pretrial motions to secure his release from confinement at the Ada County Jail to less secure psychiatric clinics or home detention on the grounds of mental illness. Evidence reviewed in pretrial proceedings and during trial suggests that Defendant was attempting to flee to Central America if the Court granted less restrictive conditions of confinement. Defendant previously attempted to and actually has transferred sufficient funds to offshore accounts in foreign countries so that he could flee the jurisdiction in the event that conviction seemed likely. Defendant admitted to a jailhouse informant, Chad Croner, that he was hoping to succeed in this plan so that he could flee the jurisdiction before trial.

Evidence was also received that suggested that Defendant continued to solicit the murder of witnesses, federal officers, and others while he has been confined during the pendency of this case. The record of this Defendant's behavior leaves no doubt in this Court's mind that uttering threats about witnesses, law enforcement officers, prosecutors, private attorneys, judges, and anyone else he perceives to be conspiring against him will continue into the future.

The timing of Defendant's actions convinces me beyond any doubt that his

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 27**

motive is and has been to delay the proceedings or to obtain a different judge who might free him from custody so he could abscond to a haven country. The alleged threats against me discovered in December 2004 did not start until after his guilty verdict following jury trial in the Tax Case and my adverse rulings against him on numerous pretrial motions in the Solicitation and Threats Case.

Defendant's conduct in the trial proceedings to date demonstrates his belief that sheer repetition of arguments and motions may accomplish his objectives. He has engaged in repeated attempts to argue and reargue the same issues the Court has previously rejected. *See, e.g.*, Order Regarding Motion for *De Novo* Detention Hearing (Docket # 129). This conduct demonstrates that Hinkson believes that, although his first attempts do not succeed, he may eventually be able to force a recusal or at least to delay the proceedings.

Defendant's conduct in the trial proceedings also demonstrates that he has been attempting at every opportunity to divert the Court's and the Government's resources from their priority obligation of adequately preparing for trial, considering the evidence at trial, and adjudicating the charges against him. The Defendant has repeatedly missed deadlines set by the Court and has offered insubstantial or no reasons to justify his delays. *See, e.g.*, Amended Order Regarding Government's Motion to Strike (Docket # 230). Considering the

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 28**

totality of circumstances, the Court finds that the Defendant was attempting to distract both the Court and the Government from actually conducting the trial, and now employs the same tactics to try to force my recusal to further delay his impending punishment.

The Defendant's demonstrated willingness to repeatedly and indiscriminately communicate his threats to various inmates with whom he has contact suggests that he wanted the information communicated to the Court. Defendant was already aware that one of his recent cellmates, Chad Croner, had come forward to allege that Defendant made threats against me, and so was aware that any of his statements in jail would be communicated to the Court. From this, it may therefore be presumed that one of his motivations was to obtain recusal. *See Greenspan*, 26 F.3d at 1006.

The Defendant's history of making death threats against other federal and state trial judges who are presiding over cases in which he is a litigant establishes his *modus operandi* to harass every court and to seek recusal of all judges against whom he harbors substantial resentment. Based on these findings and given this lengthy history of similar repetitious misconduct, I find that Defendant's real motive for the alleged death threat was to improperly force my recusal. On the basis of both my familiarity with the record in the Tax Case and the record here in

MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 29

the Solicitation Case, I further find that, because Defendant has previously and repeatedly engaged in similar misconduct directed at other judges, prosecutors, investigators, attorneys, and witnesses, it is highly probable that he will continue to engage in similar and additional misconduct in the future.

I therefore find that it would be futile and a substantial waste of judicial resources for me to recuse myself now because it is highly likely that any subsequent judge assigned to Defendant's case will be subject to the same threats and the same vexatious pressure to recuse himself. For these reasons, I hold that 28 U.S.C. § 455(a) does not require that I recuse myself from this case.

Moreover, recusal under 28 U.S.C. § 455(b) is not necessary because I did not have personal knowledge of disputed evidentiary facts concerning the proceeding. Defendant claims that I was "personally presented with a death threat," showed "continual" bias, and that my statement on the record that I did not take the alleged threats against me seriously (*see* Transcript of January 7, 2005, Pretrial Hearing, p. 93:16-25) demonstrated actual knowledge of the case. *See* Def. Memo. in Support, p. 16. However, the case involved only his threats against the three named victims, not myself. Further, no information regarding any threats against me was introduced at trial, and therefore it was never an issue in dispute before the jury during the proceedings.

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 30**

Regardless, my subjective reaction when initially reported in December 2004 to discount the veracity of the alleged threats against me was made after I referred the matter to United States Circuit Judge Thomas G. Nelson, who held a closed hearing on the alleged threat in which the undersigned had no involvement or knowledge (where Judge Nelson concluded that my recusal was not necessary), and after my consultation with the U.S. Marshals Service, who recommended as a result of their threat assessment that no security detail was warranted for me or my family. This does not establish or constitute personal knowledge of disputed facts to warrant recusal.

Finally, Defendant fails to allege in what way the Court demonstrated bias here. *See* 28 U.S.C. § 144 (requiring party to file a timely affidavit setting forth facts and reasons for belief that bias or prejudice exists). For these reasons, Defendant's motion for recusal is DENIED.

## V.   Evidentiary Hearing

Defendant argues for the first time in his reply brief that he is entitled to an evidentiary hearing on these matters. Arguments not raised in an opening brief are waived. *See United States v. Bird*, 359 F.3d 1185, 1189 n.1 (9th Cir. 2004) ("Under the law of this circuit, we decline to consider an issue which was not presented to the district court in a proper motion, or raised as an issue in

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 31**

appellant's opening brief."). Regardless, the Court concludes that no evidentiary hearing is required. The proffered evidence is inadmissible and would therefore not be likely to result in an acquittal in a new trial.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Defendant's Rule 33 Motion for New Trial or, Alternatively, Motion to Dismiss (Docket # 224) is DENIED. Inherent in that ruling, the Court DENIES the motions for new trial based on newly discovered evidence, *Brady/Giglio* violations, prosecutorial misconduct, dismissal, recusal, and the request for an evidentiary hearing.

IT IS SO ORDERED.

DATED this 22nd day of April, 2005, at Seattle, Washington.

RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation

**MEMORANDUM ORDER re DEFENDANT'S MOTION FOR NEW TRIAL - 32**