IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DAVID ROLAND HINKSON, ) <br> ) <br> Defendant. ) <br> _____) | Case Nos.  CR-04-127-S-RCT <br> CR-02-142-S-RCT <br><br> **MEMORANDUM DECISION** <br> **AND ORDER** |

Before the Court is defense counsel Wesley Hoyt's Motion to Withdraw and the Government's brief in opposition and request for sanctions. For the reasons discussed below, the Court GRANTS Mr. Hoyt's motion to withdraw and ORDERS that Mr. Curtis Smith be appointed as substitute counsel in Mr. Hoyt's

**MEMORANDUM ORDER re Motion to Withdraw - 1**

place.  The Court DENIES the Government's request for sanctions.

## DISCUSSION

On April 21, 2005, four days before the scheduled sentencing in these consolidated cases, defense counsel Wesley Hoyt filed a motion to withdraw as counsel for Defendant Hinkson.  Mr. Hoyt asserted that Frank Leslie Nicolai, a defense witness at Hinkson's trial in the Solicitation Case, made false pretrial statements to the FBI implicating Mr. Hoyt in Hinkson's solicitation to murder plot.  Mr. Hoyt argued that he should be relieved as counsel because Nicolai claimed that Mr. Hoyt provided him with legal services at the behest of Hinkson, and Nicolai accepted such services as down-payment for the murders of individuals targeted by Hinkson.

Mr. Hoyt asserted that although he never represented Nicolai and was not involved in any way in Hinkson's scheme, the accusations by Nicolai that Mr. Hoyt was involved in Hinkson's murder plot creates "an irreconcilable conflict of interest" such that Mr. Hoyt "cannot provide Mr. Hinkson with effective representation of counsel."

On April 27, 2005, Mr. Hoyt moved to postpone action on his motion to withdraw, asserting that "[t]he pending conflict defense counsel had with defendant has been resolved."  However, Mr. Hoyt continues through his May 4,

**MEMORANDUM ORDER re Motion to Withdraw - 2**

2005, Status Report to suggest that "[d]ue to [his] concern for effective representation of his client and considering [his] lack of experience in federal criminal sentencing matters it is [his] opinion that it would be in Mr. Hinkson's best interest to be represented by an experienced criminal attorney as lead counsel to argue the sentencing issues related to solicitation."[1]

The Government opposes the motion to withdraw as: (1) untimely; (2) unnecessary because defense counsel says the conflict is resolved; and (3) unwanted by Defendant Hinkson, who stated at the April 25, 2005, hearing that he still wants Mr. Hoyt to continue representation. The Government also seeks sanctions in the form of reimbursement for the expenses incurred by two government lawyers and one victim-witness for travel to and from the April 25, 2005, Boise hearing. Because of the pending motion to withdraw necessitating the Court's adjournment until June 3, 2005, of the actual sentencing of Hinkson, these individuals were not able to contribute to the April 25th hearing on the Tax &

---

[1] The Court notes that Mr. Hoyt has been inconsistent and unclear as to his current view on whether he seeks to withdraw from these proceedings. Mr. Hoyt has not formally requested to strike his Motion to Withdraw as counsel for Hinkson and stated that he feels it would be in Hinkson's best interest to have more experienced counsel for sentencing. But in his May 6, 2005, response to the Government's objections to the motion to withdraw, Mr. Hoyt states that "the issue regarding [his] Motion to Withdraw should be moot[.]" Because the Court finds that there is a potential for conflict that is unwaivable, *see infra*, the Court does not need to clarify Mr. Hoyt's position on this issue.

**MEMORANDUM ORDER re Motion to Withdraw - 3**

Structuring Case issues and will have to return to Boise for the June 3, 2005, continued sentencing hearing on both the Tax & Structuring Case and the Solicitation Case.

**I.     Motion to Withdraw**

On a motion to withdraw or substitute counsel, the Court must consider three specific factors: (1) the timeliness of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into the issue; and (3) the extent of the conflict between defendant and his counsel. *United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002).

Here, Mr. Hoyt's motion, filed four days before the sentencing hearing, was certainly untimely. *See, e.g.*, *United States v. Franklin*, 321 F.3d 1231, 1238 (9th Cir. 2003) (motion made six days before trial was not timely). This suggests that withdrawal is not warranted.

In accordance with the second factor to consider, the Court conducted a comprehensive hearing and inquiry into the reasons for Mr. Hoyt's requested withdrawal. At the hearing conducted on April 25, 2005, the following relevant facts were disclosed and the Court finds them to be as follows:

1.    Mr. Hoyt became aware of Nicolai's allegations after the close of all of the evidence in the Solicitation Case trial when he received two FBI Form 302

**MEMORANDUM ORDER re Motion to Withdraw - 4**

summaries of statements Nicolai made to the FBI on January 6 and 7, 2005, at the Ada County Jail in Boise, Idaho. April 25, 2005, Hearing Tr. at 4:3-18.

2. Mr. Hoyt did not actually receive copies of the FBI Form 302 summaries of Nicolai's statements until the afternoon of January 25, 2005, after the close of all evidence in the Solicitation Case and particularly after the cross-examination of rebuttal witness FBI Special Agent Mary Martin had been completed. *Id*. at 4:3-6. He was not aware of the contents until after his co-counsel, Mr. Thomas Nolan, had finished the cross-examination of the rebuttal witness. *Id*. at 4:9-12. Hoyt did not read the documents until later that evening when he was preparing for closing argument to be conducted the next day. *Id.*

3. Mr. Hoyt asserts that while he read the documents on the evening of the 25th, he "did not have time to fully assess the impact or understand what those 302s might have meant in terms of, first, my client's case that was pending at that time; second[], my client; and third, myself." *Id*. at 4:19-23; 16:7-17.

4. Mr. Hoyt did not immediately focus on the FBI Form 302s; instead, he "set them aside" until after the trial. *Id.* at 4:24. He says that it was not until

**MEMORANDUM ORDER re Motion to Withdraw - 5**

after trial that he realized the full import of the documents. *Id*. at 5:15-20. Following return of the jury's verdict, he proceeded to consult with other counsel from the Idaho State Bar and former Assistant U.S. Attorneys. *Id*. at 5:19 - 6:20. All counsel with whom he consulted "came to the final conclusion that [he] had no alternative but to seek withdrawal." *Id*. at 12:14-18.

5. Government prosecutors in the Solicitation Case asserted that they never believed the allegations against Mr. Hoyt and have never initiated any type of investigation of defense counsel because they do not suspect Mr. Hoyt of criminal complicity in his client's misconduct. *Id*. at 20:25 - 21:2. Nicolai later repudiated any murder plot and told the Government on January 16, 2005, that Mr. Hoyt had no knowledge of a plot to murder anyone. *Id*. at 19:23-24; 20:10-15. Mr. Hoyt is not currently, nor has he ever been, a target or subject of any criminal investigation. *Id*. at 20:20 - 21:10.

6. Mr. Hoyt never undertook the representation of Nicolai, nor did he ever perform any services on Nicolai's behalf. *Id*. at 22:16-22.

7. Mr. Hoyt could not articulate any specific defense tactic or strategy he failed to pursue, abandoned, or compromised due to Nicolai's false accusation against him. *Id*. at 25:17 - 29:24. Mr. Hoyt candidly admitted to the Court

**MEMORANDUM ORDER re Motion to Withdraw - 6**

that he could think of nothing that he intentionally did or failed to do that could establish prejudice under controlling Ninth Circuit case law to the detriment of his client Defendant Hinkson. *Id*. at 29:12-24.

8.  At no time did the Court entertain the slightest suspicion that there was any truth to Nicolai's accusations against Mr. Hoyt. *Id*. at 37:14-25.

The Court also finds that any claimed conflict that now exists between Mr. Hoyt and Defendant Hinkson did not have any effect whatsoever on the trial proceedings. The Court bases its factual conclusion on the representations that: (1) Mr. Hoyt did not learn of Nicolai's allegations until after the close of all testimony in the Solicitation Case on January 25th; (2) by his own admission, Mr. Hoyt did not realize the potential conflict until after the trial concluded; and (3) Mr. Hoyt could not think of or articulate any different trial strategies he considered or tactics that were influenced by the late disclosure of this information the night before closing arguments in the trial (which were divided equally between Mr. Hoyt and his co-counsel, Mr. Nolan). The Court concludes from these facts, and from presiding over the trial, that there was no prejudice suffered by Defendant Hinkson that would call into question the fairness of the trial on these grounds.

**MEMORANDUM ORDER re Motion to Withdraw - 7**

The primary issue here is whether Mr. Hoyt has a conflict of interest with Hinkson for future proceedings because Nicolai, a defense witness at trial, implicated Mr. Hoyt in a murder-for-hire scheme, regardless of the veracity of the allegation. The Ninth, Second, Third, and Fifth Circuits all agree that an actual conflict of interest exists when an attorney is accused of crimes similar or related to those of his client. This includes allegations of involvement in the charged crime. For example, in *Mannhalt v. Reed*, 847 F.2d 576, 581 (9th Cir. 1988), the Ninth Circuit found that an actual conflict existed in a multi-count prosecution for receiving stolen property on the basis of a witness' accusations that counsel had purchased a stolen watch from his client-defendant. *See also United States v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993); *Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125, 136 (3d Cir. 1984); *United States v. Salinas*, 618 F.2d 1092, 1093 (5th Cir. 1980). As the Second Circuit explained:

> Even if the attorney is demonstrably innocent and the government witness's allegations are plainly false, the defense is impaired because vital cross-examination becomes unavailable to the defendant. Ordinarily, a witness's blatantly false allegations provide a rich source for cross-examination . . . but, when the allegations are against the defendant's attorney, this source cannot be tapped . . . [because] [a]n attorney cannot act both as an advocate for his client and a witness on his client's behalf.

*Fulton*, 5 F.3d at 610 (relying on *Mannhalt*, 847 F.2d at 580). The case at bar is of

**MEMORANDUM ORDER re Motion to Withdraw - 8**

course distinguishable to some extent because the source of the accusation is a defense witness who testified on behalf of Defendant Hinkson and this subject was never elicited by either party at the Solicitation Case trial. Nonetheless, the Court considers the concerns identified in *Fulton* as being pertinent to a defense witness where defense counsel may have information to which counsel should testify or has an interest in discrediting his own witness to refute a personal accusation made against counsel.

The Court heard *in camera* further representations from Mr. Hoyt to support his request to withdraw, which the Court has ordered sealed. Hearing Tr. at 28:1 - 38:7. After considering all of the representations by both prosecutors and defense counsel and legal argument on the issue, and in an abundance of caution, the Court concludes that Mr. Hoyt should be required to withdraw as counsel and that substitute counsel must be appointed for future proceedings. As stated above, the Court finds as a matter of fact that no actual conflict of interest ever arose during the trial. However, based on the *in camera* submission, *id*. at 28:9-15; 33:10-18, the Court now sees a potential for conflict in Mr. Hoyt's continuing representation in the sentencing proceeding.

For example, the Government seeks a two-point sentencing enhancement

**MEMORANDUM ORDER re Motion to Withdraw - 9**

for obstruction of justice based in part on the allegation by Hinkson's Ada County Jail cellmate Chad Croner that, while Hinkson was awaiting trial and incarcerated with Croner, Nicolai, and other inmate-witnesses who testified for the defense, Hinkson attempted to hire Croner to kill the United States District Judge Edward Lodge, A.U.S.A. Nancy Cook, and IRS Special Agent Steven Hines.  At trial, Hinkson relied on the testimony of three inmate witnesses, including his cellmate, Frank Nicolai, to refute Croner's testimony.  The Court finds, based on hearing direct- and cross-examination of Nicolai, that Nicolai was completely discredited as a witness at trial.  The incredible nature of Nicolai's testimony was amply demonstrated by introduction and admission of prior inconsistent statements and the rebuttal testimony of F.B.I. Special Agent Mary Martin.  In challenging the proposed enhancement now, and in representing his client's best interest, Mr. Hoyt must assert that, along with the other witnesses, Nicolai was nonetheless credible and testified truthfully about Hinkson never soliciting anyone's murder while held in jail.  Yet, simultaneously, Mr. Hoyt now has a continuing personal interest in showing that Nicolai is not a credible witness with respect to his allegation about Mr. Hoyt's knowledge as to whether there was, in fact, such a murder scheme.

     Mr. Hoyt's potential for conflict of interest is evident from his ambivalent

**MEMORANDUM ORDER re Motion to Withdraw - 10**

stance on Nicolai's credibility in Hinkson's reply to the Government's request for an obstruction sentencing enhancement. The reply states only that "[t]hree witnesses, at least as credible as Croner . . . all agreed that Croner was lying." Defendant's Reply at 2:1-5. This is not an actual endorsement of Nicolai's testimony, nor is it the clear and zealous advocacy on behalf of Defendant Hinkson that has otherwise been demonstrated in Mr. Hoyt's representation and legal argument throughout both trial proceedings.

Because the Court will need to decide before pronouncing sentence whether or not it will base a sentencing enhancement on the alleged jailhouse conduct by Hinkson about which Croner testified, Nicolai's credibility on this issue may need to be revisited at sentencing. If so, a conflict of interest may occur based on Mr. Hoyt's continuing representation which is now potentially tainted by Nicolai's allegations. The Court will not allow such taint to ripen into an actual conflict and possibly adversely affect Defendant's Sixth Amendment rights in future proceedings.

Furthermore, after conducting the *in camera* proceeding with Mr. Hoyt, the Court concludes on the basis of information garnered therein that Nicolai's allegation has had a substantial impact personally on Mr. Hoyt, and it would be

**MEMORANDUM ORDER re Motion to Withdraw - 11**

unreasonable to assume that there would be no lingering influence on his advocacy in the upcoming sentencing and any appellate proceedings. Also in light of the *in camera* representations by Mr. Hoyt, the Court concludes that the potential conflict is not waivable by Hinkson, and his consent to continued representation is not controlling on the legal issue before the Court. *See Wheat v. United States*, 486 U.S. 153, 163 (1988) (holding that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"); *see also United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998). Therefore, the Court ORDERS that Mr. Hoyt's Motion to Withdraw as counsel is GRANTED, and that new counsel be substituted.

     Mr. Hoyt represents that substitute *pro hac vice* counsel, Mr. Steven R. Anderson, has been retained for purposes of the Tax & Structuring Case, but that the defense has been unable to retain substitute counsel for the Solicitation Case even though Defendant and Mr. Hoyt have been diligently seeking new counsel for over three months. The Court notes that Hinkson has been represented at

**MEMORANDUM ORDER re Motion to Withdraw - 12**

various times since November 2002, by five prior defense attorneys through the two related trial proceedings and concludes that waiting any longer for Hinkson to continue trying to retain new counsel would likely unduly delay the conclusion of sentencing and entry of judgment in both cases.  The Court has therefore arranged and now ORDERS that C.J.A. panel attorney Mr. Curtis Smith be appointed as lead counsel for Defendant Hinkson in both the Tax & Structuring Case and the Solicitation Cases.  If Mr. Smith has no objections to working with Mr. Anderson as co-counsel to assist on the Tax & Structuring Case, the Court will permit Mr. Anderson to enter a limited appearance *pro hac vice* in these proceedings.  Mr. Hoyt is encouraged to cooperate fully with Mr. Smith in providing copies of pertinent transcripts, legal pleadings, legal research, and factual memoranda to assist in the transition.

## II.  Sanctions

The Government's request for sanctions against Mr. Hoyt in the form of compensation for travel expenses incurred is DENIED.  While the timing of the motion to withdraw remains suspect, representations by Mr. Hoyt *in camera* leads the Court to believe that he did not act in bad faith and that the withdrawal of prior counsel, Mr. Nolan, was, although regrettable in hindsight, necessary under the circumstances.

**MEMORANDUM ORDER re Motion to Withdraw - 13**

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Wesley Hoyt's Motion to Withdraw as counsel for Defendant is GRANTED, effective after the May 9, 2005, telephonic status conference. The Court appoints Mr. Curtis Smith as lead counsel for Defendant Hinkson in Case Nos. CR-04-127-S-RCT and CR-02-142-S-RCT. The Court DENIES the Government's request for sanctions. Defense counsel's Motion to Postpone action on the Motion to Withdraw is DENIED as moot. The presentencing telephonic status conference on May 9, 2005, at 9:00 a.m. (PDT) will proceed as scheduled. Sentencing shall occur on June 3, 2005, at 9:00 a.m. in Courtroom No. 1 at the Boise, Idaho, courthouse.

Defense counsel must file on or before May 20, 2005, any further challenges to the trial proceedings, objections to the presentence report, and advise the Court and the Government of witnesses they intend to call or re-call for the June 3, 2005, sentencing hearing. The Government's response is due on or before May 27, 2005.

IT IS SO ORDERED.

DATED this 6th day of May, 2005, at Seattle, Washington.

**MEMORANDUM ORDER re Motion to Withdraw - 14**

                                                 _____
RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation

**MEMORANDUM ORDER re Motion to Withdraw - 15**