IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> DAVID ROLAND HINKSON, ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | Case No. CR-04-127-RCT <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant David Roland Hinkson's pro se emergency motion for compassionate release in light of the COVID-19 pandemic. *See* Case No. 1:04-cr-00127-RCT, Doc. No. 366. For the reasons explained below, the Court denies the motion.

## BACKGROUND

The Court well remembers Hinkson's criminal cases. In May 2004, a Boise jury found Hinkson guilty of twenty-six criminal tax violations stemming from his operation of WaterOz, a highly profitable water bottling company whose product

Hinkson claimed could cure various maladies and diseases.  *See* Case No. 3:02-cr-00142-BLW-RCT, Doc. No. 307; Case No. 1:04-cr-00127-RCT, Doc. No. 269-1 at 59:3–60:14, Doc. 269-3 at 96:24–97:6.  For sentencing purposes the Court found the loss to the government to be over $3.5 million in undeclared income and unpaid employment taxes, and Hinkson also pleaded guilty to several misdemeanor crimes involving Food, Drug, and Cosmetic Act ("FDA") violations.

While awaiting trial on the tax case, Hinkson was indicted for soliciting the murders of three federal officials involved in the case: the Honorable Edward J. Lodge, who was assigned to preside over the tax trial, Assistant United States Attorney Nancy Cook, the lead prosecutor, and IRS Criminal Investigation Division Special Agent Steven Hines, the case agent.  *See* Case No. 1:04-cr-00127-RCT, Doc. No. 37.  A second Boise jury ultimately convicted Hinkson of three counts of soliciting their murders, and this Court sentenced Hinkson on all of the counts of conviction from his first and second trials, and from his guilty pleas to the FDA violations, at a consolidated sentencing proceeding that spanned two days.  *See* Case No. 1:04-cr-00127-RCT, Doc. Nos. 265, 269, and 271-1.

Because of the aggravated nature of Hinkson's criminal behavior, including his attempts to obstruct justice while criminal proceedings were pending against him, the Court imposed a consolidated sentence of 516 months' imprisonment, as well as a fine of $100,000.  Hinkson, who is now 63 years old, has served

approximately 200 months; his anticipated release date is April 21, 2040.[1]  The Federal Bureau of Prisons ("BOP") reports that Hinkson has made only minimum payments in $25 increments totaling $250 during his incarceration so far, and he appears to have made no payments toward the taxes he owes.  He has never accepted responsibility for his conduct, and he has filed numerous unsuccessful appeals and collateral attacks on his convictions, making bizarre allegations that he is being held as a "political prisoner" or that he enjoys some form of "diplomatic immunity" as being an ambassador for a Canadian First Nations tribe.  His lack of remorse is telling.  Through privately-retained counsel, he is concurrently seeking permission from the Ninth Circuit to file a second or successive § 2255 petition. *See* Case No. 19-71881.

## LEGAL STANDARD

Hinkson brings this motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).  A motion for compassionate release may be made by either the Director of the BOP or by a defendant who has fully exhausted administrative remedies within the BOP.[2]  In order to modify a sentence and grant

---

[1] *See* https://www.bop.gov/inmateloc/.
[2] Hinkson also purports to seek relief under the CARES Act, extending the U.S. Attorney General's discretion to exercise emergency authority to further increase the use of home confinement.  Although Hinkson seems to confuse the remedies of

compassionate release, a district court must engage in a three-step process. First, it must consider the 18 U.S.C. § 3553(a) sentencing factors. Second, the Court must find, as relevant here, that "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission has determined that "extraordinary and compelling reasons" to release a defendant from BOP custody include: (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. *See* U.S.S.G. § 1B1.13. Third, the Court specifically must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* 18 U.S.C. § 3582(c)(1)(A). The government opposes Hinkson's motion. *See* Case No. 1:04-cr-00127-RCT, Doc. No. 368.

## ANALYSIS

### A. The § 3553(a) sentencing factors do not favor release and Hinkson is a continuing danger.

Hinkson's criminal behavior was prolonged and recidivist in nature. While on pretrial release on the tax and FDA indictment, he committed further criminal

---

home confinement and compassionate release, thirty days have passed since he submitted a request for compassionate release to the Warden of FCI Terre Haute, where Hinkson is now housed. This establishes exhaustion under the First Step Act and allows this Court to consider his motion. *See* 18 U.S.C. § 3582(c)(1)(A).

4

acts from December 2002 to January 2003 by soliciting the deaths of the federal officials involved in his tax prosecution, offering $10,000 a head to Elvin Joe Swisher.  Awaiting his 2005 trial for soliciting their murders, in November 2004 he continued to solicit others to carry out the task from the Ada County Jail in which U.S. marshals had placed him, by offering $30,000 to fellow inmate Chad Croner, to do the job.  *See* Case No. 1:04-cr-00127-RCT, Doc. No. 271-1 at 543:24–551:11.  As further evidence of his unrelenting hatred for his victims, Hinkson in a face-to-face courtroom encounter at sentencing attempted to intimidate IRS Special Agent Steven Hines when he stared at the case agent and mouthed, "You Mother Fucker."  Doc. No. 269-3 at 113:21–116:4; Doc. No. 271-1 at 534:24–535:6.

Based on the extensive record adduced at the two-day sentencing hearing in these consolidated cases, the testimony the Court heard at his two trials spanning almost five weeks in total, and the record of Hinkson's behavior in prison to date, the Court finds that the nature and circumstances of Hinkson's offenses, his history and characteristics, the substantial portion of his sentence that remains to be served, and the need to avoid unwarranted sentencing disparities all weigh against Hinkson's release.  *See* 18 U.S.C. § 3553(a)(1)–(4), (6).  So, too, does Hinkson's continuing dangerousness.

Not only did Hinkson evade his personal and professional tax obligations and violate health and safety laws while operating WaterOz, he then attempted to

use his substantial financial means on more than one occasion to have the federal investigator, prosecutor, and district judge involved in his tax evasion case murdered. The nature and circumstances of these offenses certainly do not favor early release.

An evaluation of Hinkson's history and characteristics, as well as the undersigned judge's personal recollections of Hinkson's behavior during these lengthy criminal proceedings, reveals an intelligent man who believes that he is above the law, holds a very skewed view of his legal obligations, is unwilling to conform his behavior to lawful requirements, and steadfastly refuses to take responsibility for his actions. Hinkson's prison records suggest that nothing has changed since the time of his crimes, trials, and sentencing. His personality and nonconformist attitude remain the same. Hinkson has never taken responsibility for his serious crimes, and he has paid virtually nothing towards his restitution and fine. He has repeatedly committed disciplinary infractions while in prison, including attempts to illegally conduct outside business from prison without authorization and numerous instances of abuse of phone privileges—all of which he has denied but for which he was administratively disciplined within the various federal prisons in which he has been incarcerated. This too repeats identical conduct which occurred when Hinkson was being held in federal pretrial detention in Ada County, Idaho. He placed unauthorized telephone calls to third parties

through his defense attorney's office, *see* Case No. 1:04-cr-00127-RCT, Doc. No. 271-1 at 485:23–488:2, and he was found in possession of contraband while housed at the county jail, *id.* at 497:20–498:9.

The Court is also concerned, based on the federal prison disciplinary reports submitted by the government in response to this motion, that Hinkson is exhibiting a similar *modus operandi* while in prison that was revealed during the investigation which led to his convictions.  *See* Case No. 1:04-cr-00127-RCT, Doc. No. 369-1. The Court found at sentencing that Hinkson engaged in complex business transactions using shell business entities and transferring money to offshore bank accounts, both here and abroad, to hide assets in order to avoid financial responsibility for his willful conduct in circumventing reporting and withholding requirements of the Tax Code, as well as to make himself judgment proof to the IRS and private judgment creditors.  *See* Doc. No. 271-1 at 361:3-7, 529:15–530:15.  Hinkson also violated the terms of his original pretrial release conditions following surrender of his U.S. passport by seeking to acquire a new one, claiming the original was "missing." *Id.* at 496:25–497:16.  The Court concluded at sentencing that "the continuing security breaches and violations of institutional rules of conduct committed by the defendant while in pretrial detention warrant a recommendation to the Bureau of Prisons that the defendant be classified as a high-risk inmate who refuses to comply with institutional rules, who poses a danger to

federal officers, a risk of flight, and who has access to money already secreted offshore." *Id.* at 617:12–20.

Hinkson's Sentencing Guidelines range, based on a criminal history category of I and an offense level of 41, was 324 to 405 months. After serving approximately 200 months, he is still 124 months from completing even the bottom of that sentencing range, let alone his actual 516-month sentence. Granting the motion now would release Hinkson twenty-six years early, and would in itself result in a gross sentencing disparity compared to others with similar offense levels and similar crimes.

Based on his motion and prison record, Hinkson exhibits an ongoing failure to take responsibility for his actions and an inability or unwillingness to conform to rules and requirements. Under the statute discussed above, the Court must find that "the defendant is not a danger to the safety of any other person or to the community." The Court cannot make that finding as to this defendant. Nor does his continuing behavior give the Court any confidence that Hinkson would abide by any conditions of supervised release.

**B. Hinkson has not shown extraordinary and compelling reasons for release.**

Even if the § 3553(a) factors counseled early release and the Court were to find that Hinkson is not a danger to the safety of others or the community, the Court still would be unable to grant the motion because Hinkson has not

demonstrated extraordinary and compelling reasons for release due to the COVID-19 pandemic.

The Centers for Disease Control and Prevention ("CDC") has identified factors that place individuals at higher risk for severe illness from COVID-19.[3] Hinkson has not demonstrated that he meets any of the identified factors, as he is not 65 years or older and his BOP medical records do not indicate that he suffers from any of the serious underlying medical conditions listed, which include chronic lung disease or moderate to severe asthma, serious heart conditions, severe obesity, diabetes, liver disease, chronic kidney disease requiring dialysis, or conditions causing a person to be immunocompromised.  Further, the facility where Hinkson is currently housed has reported very low numbers of infections to date.[4]  The Court thus finds that Hinkson has failed to demonstrate extraordinary and compelling reasons for release.

In his reply in support of his motion, Hinkson for the first time argues that his consecutive sentences were imposed in violation of the law and therefore constitute an extraordinary or compelling reason for release.  *See* Case No. 1:04-cr-00127-RCT, Doc. No. 371.  The Court will not consider that argument here

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.
[4] *See* https://www.bop.gov/coronavirus/ (as of June 25, 2020, showing five confirmed cases among inmates, no cases among staff, and one inmate death).

because parties "cannot raise a new issue for the first time in their reply brief." *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 515 (D. Idaho 2013) (quoting *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir.1990)).  Moreover, Hinkson's argument appears to be a collateral attack on his sentence, which this Court cannot consider unless a second or successive petition is certified by a panel of the Ninth Circuit Court of Appeals as provided by 28 U.S.C. § 2244.  *See* 28 U.S.C. § 2255(h).

## ORDER

In  accordance with the Memorandum Decision above and the Court's findings herein,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for compassionate release (Doc. No. 366) is DENIED.

The Clerk is directed to send a certified copy of this order to:

Warden
FCI Terre Haute
Federal Correctional Institution
4200 Bureau Road North
Terre Haute, IN 47808
      Re: David Roland Hinkson
         Inmate No. 08795-023

DATED this 7th day of July 2020, at Coeur d'Alene, Idaho.

DATED: July, 07 2020

Richard C. Tallman
UNITED STATES CIRCUIT JUDGE